STATE of Iowa, Appellee,

v.

Michael T. PARKER, Appellant.

No. 68619.

Supreme Court of Iowa.

Dec. 21, 1983.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Steven M. Foritano, Asst. Atty. Gen., and David E. Richter, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

Defendant Parker appeals from his judgments of conviction and sentence for second-degree theft of a diesel cab-over truck tractor, a violation of Iowa Code subsections 714.1(2) and 714.2(2) (1981), and first-degree theft of a refrigerated trailer, a violation of Iowa Code subsections 714.-1(2) and 714.2(1) (1981). He contends only one misappropriation occurred and trial court erred in permitting him to be tried and convicted on two theft charges. We affirm.

There was abundant evidence from which the jury could have found that in July 1981 defendant entered into an equipment lease with Silvey Refrigerated Carriers of Council Bluffs. The arrangement was that defendant would transport loads assigned him by the company. He could transport loads for other shippers only with the prior approval of Silvey and in any event he was

to telephone the Silvey office daily while on the road.

October 13, 1981, defendant was given a $300 advance for expenses and dispatched to Wilson Foods packing plant at Albert Lea, Minnesota. He was to pull an empty trailer to that plant and pick up a loaded trailer for another destination. Nothing further was heard from defendant nor was Silvey able to locate its equipment until defendant had an accident with the rig in Tennessee in January 1982. He had changed the color of the truck tractor and painted new identifying numbers on both units.

Obviously the jurors, who returned a verdict in less than one hour, disbelieved defendant's testimony that he thought he was authorized to haul to the west coast a load of steel shelving he picked up in Omaha, and thereafter to haul loads for other shippers, all without communication with Silvey.

February 8, 1982, defendant was charged by trial information with one count of first-degree theft under Iowa Code subsection 714.1(1). April 9, 1982, the information was amended to two counts, one charging second-degree theft of the truck tractor (motor vehicle) and the other charging first-degree theft of the trailer. April 23, 1982, the information again was amended to charge the two thefts under Iowa Code subsection 714.1(2), thus basing the charges on misappropriation rather than a subsection 714.1(1) taking.

Before trial commenced on May 5, 1982, defendant presented an in-chambers motion that indirectly attacked the amended trial information. Defendant articulated an objection that he could only be charged with one offense because the circumstances disclosed "that this was only one taking." Defendant's motion was overruled.

Appealing, defendant asserts only one misappropriation occurred. Trial court therefore erred, he argues, in permitting him to be tried and convicted on two theft charges. The State first contends defendant waived any complaint concerning the trial information because it was not raised within forty days after his arraignment on March 9, 1982. *See* Iowa R.Crim.P. 10(2)(b), 10(4). In the alternative, the State argues that under the statutory language there were two separate offenses and thus no multiplicity of charges.

I. We hold the State's waiver argument inapplicable in this instance. On April 9, 1982, about a month after defendant's arraignment, the trial information was amended, dividing the charge into two counts. Defendant was not rearraigned and within forty days his motion attacking the amendment was presented to trial court. For obvious reasons the State did not raise its waiver argument below, but met the issue head on. Defendant's good cause for the delay was clear. In these circumstances we will not consider the State's waiver argument here.

II. This brings us to an examination of the merits of defendant's multiplicity contention. Several statutory provisions are relevant:

*714.1 Theft defined.* A person commits theft when the person does any of the following:

. . . .

(2) Misappropriates property which the person has in trust, or property of another which the person has in his or her possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property . . . .

The theft of the refrigerated trailer was charged under the above subsection and Iowa Code subsection 714.2(1):

The theft of property exceeding five thousand dollars in value . . . is theft in the first degree.

The theft of the truck tractor was charged under Iowa Code subsection 714.1(2), first above quoted, coupled with Iowa Code subsection 714.2(2):

[T]heft of a motor vehicle as defined in chapter 321, irrespective of value, is theft in the second degree.

It is generally agreed that under certain conditions two or more charges may be brought as a result of a single act or transaction without violating the double jeopardy clause of the fifth amendment. The basic rule was laid down in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932):

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

The *Blockburger* Court affirmed judgments of conviction where a single narcotic sale resulted in both a charge that the sale was not made from the original stamped package, and a separate charge that the sale was not made pursuant to a written order of the purchaser. Twenty-six years later the Supreme Court, on almost identical facts, refused to retreat from *Blockburger* in *Gore v. United States*, 357 U.S. 386, 392, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405, 1410 (1958):

> Finally, we have had pressed upon us that the Blockburger doctrine offends the constitutional prohibition against double jeopardy. If there is anything to this claim it surely has long been disregarded in decisions of this Court, participated in by judges especially sensitive to the application of the historic safeguard of double jeopardy.

More recently, the Supreme Court has reaffirmed the *Blockburger* doctrine in *Albernaz v. United States*, 450 U.S. 333, 337–39, 101 S.Ct. 1137, 1141–42, 67 L.Ed.2d 275, 280–82 (1981) (single agreement resulting in charge of conspiring to import marijuana and a separate charge of conspiring to distribute marijuana). *See also Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715, 723–24 (1980). Finally, just last term the Court again applied the *Blockburger* doctrine and affirmed a state court's right to impose cumulative sentences for all statutorily

defined offenses arising from a single act, *Missouri v. Hunter*, —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

Iowa Rule of Criminal Procedure 6(1) recognizes that two charges may lie as a result of a single incident:

> Two or more public offenses which arose from the same transaction or occurrence ... may be alleged and prosecuted as separate counts in a single complaint ....

*See State v. Goff*, 342 N.W.2d 830, 834 (Iowa 1983); *State v. Mead*, 318 N.W.2d 440, 445–47 (Iowa 1982); *State v. Combs*, 316 N.W.2d 880, 883 (Iowa 1982). This court followed the *Blockburger* analysis in *State v. Cook*, 261 Iowa 1341, 1346–47, 158 N.W.2d 26, 29–30 (1968), thus permitting a prosecution for larceny of money despite a prior unsuccessful prosecution for larceny of a motor vehicle, both charges arising out of the same incident. An analogous result was reached in *State v. Burton*, 231 N.W.2d 577, 578 (Iowa 1975) ("The charges of burglary with aggravation and robbery with aggravation are separate and distinct offenses; each contains elements not included in the other. They are not the 'same offense.'"). *See also State v. Amsden*, 300 N.W.2d 882, 885–86 (Iowa 1981).

It remains, then, for us to examine the two offenses charged here to determine whether each requires proof of an additional fact that the other does not.

The refrigerated trailer theft charge required the state to prove:

1. Theft
2. of property
3. exceeding $5000 in value.

The truck tractor theft charge required the State to prove:

1. Theft
2. of a motor vehicle as defined in chapter 321.

It is apparent that the trailer charge compelled the State to prove the fact that the property exceeded $5000 in value, an element not required with respect to the truck tractor charge. The tractor theft count required the State to prove the prop-

erty taken was a motor vehicle as defined in Iowa Code chapter 321, a fact not required to be proved with respect to the trailer theft count.

Defendant relies on a common-law rule from 52A C.J.S. *Larceny* § 53 at 479–80 (1968), quoted in *Amsden,* 300 N.W.2d at 884, that where several articles of property are stolen from the same owner at the same time and place, only a single crime of larceny has occurred. *See State v. Cabbell,* 252 N.W.2d 451, 453 (Iowa 1977). The *Amsden* quotation, however, was proceeded by the caveat, "[i]n the absence of statute providing otherwise." 300 N.W.2d at 884.

The legislature's intent with respect to the motor vehicle provision in Iowa Code subsection 714.2(2) is dispositive. Prior to enactment of our present criminal code, larceny was divided into several separate offenses, *see* Iowa Code chapter 709 (1977), and the distinct offense of larceny of a vehicle was defined in Iowa Code section 321.82 (1977):

> *Larceny of vehicle.* If any person shall steal, take and carry away, irrespective of value, any vehicle, he or she shall be punished by imprisonment in the penitentiary not more than ten years, or by fine of not more than one thousand dollars, or by both such fine and imprisonment.

Then, as now, the statutory definition of "vehicle" was so broad as to encompass "motor vehicle" as statutorily defined.[1] *Compare* Iowa Code subsections 321.1(1) and (2) (1977) *with* the same subsections in the 1981 Code. In pursuit of its objective to bring scattered criminal offenses within the criminal code, the legislature as a part of the Iowa Criminal Code repealed these scattered provisions, including section 321.-82, above quoted. *See* 1976 Iowa Acts ch. 1245, § 525. In doing so, however, it again narrowed the scope of the separate offense to "motor vehicles," and made it a part of Iowa Code subsection 714.2(2). 4 J. Yeager and R. Carlson, *Criminal Law and Procedure* § 322 at 83–84 (1979), yields the following statement:

> § 714.2(2) is a combination of the former grand larceny, common thief, and motor vehicle theft statutes. The purpose of the inclusion of motor vehicles in this subsection is a recognition of the importance of the automobile to practically everyone in the Iowa economic and social environment, and is also a recognition of the speculative nature of motor vehicle values, particularly in the lower price ranges. However, as the value of the typical family automobile soars well above the five thousand dollar level, the decision to classify all motor vehicle thefts as second degree theft may be questioned.

The special treatment accorded automobiles, referred to in the above-quoted matter, is underlined in a cluster of statutes in Iowa Code chapter 321 designated as the "Special Antitheft Law," from which 321.-82 was selected for repeal. *See* Iowa Code §§ 321.72–.96 (1983).

One effect of narrowing the classification when the theft statute was moved from section 321.82 to subsection 714.2(2) is that the theft of a "vehicle"—in this case, the trailer—can be charged under section 714.1 and subsection 714.2(1). The theft of a motor vehicle, however—in this case, the truck tractor—can be charged only under section 714.1 and subsection 714.2(2).[2] A second and perhaps unintend-

---

1. Section 321.82 was amended by 1976 Iowa Acts ch. 1168, § 5, to add the word "shall" following the word "person," and to strike the word "motor" before the word "vehicle," and to be gender neutral.

2. Dunahoo, *The New Iowa Criminal Code,* 29 Drake L.Rev. 237, 370 (1979–1980), makes the following observation:

> The special attention given to thefts of motor vehicles is anomalous. Whereas it fills a

potential gap at the lower end of the spectrum in effectively protecting used cars with "speculative" retail values, it nevertheless does not realistically take inflation into account at the upper (or even the middle) end of the spectrum. A logical explanation for this unrealistic placement is that this provision first appeared in the report by the Criminal Code Revision Study Committee. That committee's work was done over a four-year period 1969

ed result of the transfer is the reduction of the penalty from ten years' imprisonment or fine of not more than $1000, or both, to that for a class "D" felony, thus cutting the imprisonment time in half. *See* Iowa Code § 902.9(4) (1983).

■ The legislature apparently later initiated the review predicted by Yeager and Carlson. As amended by Acts 1983, subsection 714.2(2) now provides:

> The theft of property exceeding five hundred dollars but not exceeding five thousand dollars in value or theft of a motor vehicle as defined in chapter 321, *not exceeding five thousand dollars in* value, is theft in the second degree. Theft in the second degree is a class "D" felony. *However, for purposes of this subsection, "motor vehicle" does not include a motorized bicycle as defined in section 321.1, subsection 3, paragraph b.*

1983 Iowa Acts ch. 134. As so amended, section 714.2 can be interpreted to imply that theft of motor vehicles of a value exceeding $5000 may now be charged under section 714.1 and subsection 714.2(1), thus invoking the penalties of a class "C" felony.[3] It also assures, as it did before the amendment, that the theft of a motor vehicle cannot be charged under the provisions of the subsections that follow subsection 714.2(2), and thus reduce the penalties further.

■ Prior to the 1983 amendment, however, it is plain that the legislature selected motor vehicles for separate treatment, just as it did thefts of property from the person of another or thefts of property from destroyed buildings, also singled out for separate treatment in Iowa Code subsection 714.2(1). In this case, as in *Cook*, 261 Iowa 1341, 158 N.W.2d 26, the counts brought under subsection 714.2(1) and the motor

to 1973, during which time a $5000 automobile certainly was not as commonplace as it is now. Unfortunately, no legislative attempt was made to revise the classification and make all thefts of motor vehicles a Theft in the First Degree. The General Assembly should take care of this during its next session.

vehicle provision of subsection 714.2(2) were each a form of theft[4] under subsection 714.1(2) but each encompassed different elements and were charged under separate statutory provisions.

We therefore hold there were two separate, defined offenses committed by defendant even though they occurred as a part of one incident. Trial court did not err in permitting defendant to be tried and convicted on the two counts. We affirm the judgment entered by district court.

AFFIRMED.

**3.** We do not suggest that upon the theft of one motor vehicle a prosecution would lie under both subsections 714.2(1) and 714.2(2).

**4.** See *State v. Jackson,* 251 Iowa 537, 543–44, 101 N.W.2d 731, 735 (1960).